## EDMONDS, Respondent, v. MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, Appellant.

### (144 N. W. 718.)

**Insurance—Life Insurance—Extra Hazard—Prohibited Period— Death Thereafter.**

> Where the application for a life policy provided that during one year following date of issue of policy the insured should not engage in certain extra-hazardous occupations, and the policy provided that it was free from any restriction after one year from its date, **held**, that the fact that insured, before expiration of one year, engaged in a prohibited occupation does not wholly avoid the policy, but merely suspends it during the balance of the prohibitive period; and upon death after expiration of that time recovery may be had thereunder, where the death was in no manner due to or connected with the engagement in such occupation during such period.

(Opinion filed December 30, 1913.)

Appeal from Circuit Court, Minnehaha County. Hon. Joseph W. Jones, Judge.

Action by Charles H. Edmunds against the Mutual Life Insurance Company of New York, to recover upon a life insurance policy. From a judgment overruling a demurrer to the complaint, defendant appeals. Affirmed.

*Bailey & Voorhees,* and *Frederick L. Allen,* for Appellant.

The position which we take in this case is that the engaging by the insured, Clarence P. Edmunds, in the business of the handling of electric wires and dynamos prior to the expiration of one year from the date of the issuance of the policy constituted a breach of the policy and that thereafter the policy became void and no recovery could be had thereon. We contend that the engaging in the prohibited occupation, eleven months after the policy was issued, constituted just as much a breach of its conditions as if the insured had engaged in the occupation of handling

electric wires and dynomos the day after he obtained the policy. The fact that the death of the insured did not occur until three months after the expiration of the limit of one year, is immaterial. The policy was broken during the year, when the insured engaged in the prohibited employment and was not revived by the fact that the year elapsed before he met his death. The wording of the policy is not that the policy shall be void in case the insured engage in the prohibited occupation and "death ensues within one year from the date of the issuance of the policy," but the insured in his application agreed, as an inducement for the issuance of the policy of insurance, that during one year after its issue he would not engage in the occupation of handling electric wires and dynamos.

While we have been able to find no reported case upon a life insurance policy involving the precise questions involved in this case there are many fire insurance cases which have been decided upon analogous state of facts. Imperial Fire Insurance Company v. Coos County, 151 U. S. 452; More v. Phoenix Company, 62 N. H. 240; Diehl v. Adams County Mutual Insurance Company, 58 Pa. St., 443; Coicoechea v. Louisiana State Insurance Company, 6 Hart (N. S.) 51 (La.)

The contract entered into between Clarence P. Edmunds and the Appellant was a lawful one and was one which modern industrial methods renders necessary in the life insurance business, for that business cannot be conducted unless the insurance company can be assured of receiving truthful and reliable information as to the business or industrial occupation followed by the insured.

If this court should hold that the defendant cannot contest liability upon this policy upon the ground of the breach of contract upon the part of the insured, then the agreement in the application not to engage in the business of "handling electric wires or dynamos" within one year is an unenforcible agreement, and any person desiring to obtain a policy of insurance is at perfest liberty to make any misrepresentation or agreement he may see fit in regard to his habits, health or business occupation, and such misrepresentation will not avail the insurance company as a defense in the action upon the policy.

## IN REPLY.

Counsel for Respondent have overlooked the provisions of the South Dakota Statutes, under which the decisions cited in their briefs have no bearing upon the question at issue in this case.

Section 1856, Civil Code: "A statement in a policy, which imports that it is intended to do or not to do a thing which materially affects the risk, is a warranty that such act or omission shall take place."

This section is the same as section 1419 of the Civil Code, in the final report of the Commissioners of the Code, presented to the legislature of the state of New York in 1865. The commissioners based the section upon the cases of Murdock v. Chenango County Mutual Insurance Company, 2 N. Y. 210, and Bilbrough v. Metropolis Insurance Company, 5 Duer 587.

Section 1856, was adopted by the Legislative Assembly of the Territory of Dakota as a part of the Civil Code by Act, approved January 12, 1866. It was enacted within a very few months after the report of the Commissioners of the Code was made in 1865 to the Legislature of the state of New York, and, in adopting it, the Legislative assembly of the Territory of Dakota undoubtedly intended to enact it with the construction placed upon it by the Commissioners of the Code. So far as we have been able to ascertain there has never been a decision of this court construing Section 1856, Civil Code. We submit, that in view of these facts, it is not too much to presume that this court will not, at this time, disturb what has been the settled law of the territory and the state for more than forty-seven years and give to section 1856 Civil Code, a forced construction different from that accorded to it by the Commissioners of the code and acquiesced in by the courts of the territory and state since a time prior to the birth of more than one of the judges who are sitting upon this court.

Section 1859 Civil Code provides that "A policy may declare that a violation of specified provisions thereof shall avoid it; otherwise the breach of an immaterial provision does not avoid the policy." This section is also copied from the report of the commissioners of the code, and the commissioners say regarding it, "this and the preceding  sections are  intended to relax the

strictness which now requires performance of immaterial conditions."

Under the provisions of sections 1856 and 1859 Civil Code, the questions involved in this case narrow down to the issue as to whether the warranty upon the part of the assured, that he would not engage in the business of "handling electric wires or dynamos" constitutes a "material" warranty. Commissioners of the Code seem to have used the word "warranty" in a sense different from what, in the absence of a statute like section 1859, it is used in life insurance. It was evidently the intention of the Commissioners to provide that policies of insurance should be avoided in case of a breach of a material representation, warranty or other provision of the policy, even if the policy contained no express condition for a forfeiture, but to sustain liability under the policy in case the warranty, representation, or other provisions did not materially affect the risk.

The violation by the insured of his engagement not to enter into the business of "handling electric wires and dynamos" during the period of one year following the date of issue of the policy of insurance, does materially affect the risk. Waterbury v. Dakota Fire and Marine Insurance Company, 6 Dakota 468.

Without the aid of section 1856, Civ. Code, the law is by no means well settled, as counsel for Respondent would assume, that such provisions as the one under consideration are only effective in case the policy contains an express forfeiture clause. We cite to the contrary: Jackson v. Mutual Life Insurance Company, 186 Fed. Rep. 447. Tigg v. Register Life Insurance Company, 152 Ia. 720. Brignac v. Pacific Mutual Life Insurance Company, 112 L. 547. (p. 590); S. C. 36 So. Rep. 595 (p. 600.) Mutual Life Insurance Company v. Kelly 114 Fed. Rep. 268, (p. 279.)

*Charles P. Bates,* and *E. H. Wilson,* for Respondent.

In each of the cases cited by counsel in support of their contention, the policy of insurance contained a clause expressly providing that, upon a breach of certain conditions by the assured, the policy should be void and of no effect.

In the case at bar, the policy contains no provisions of forfeiture, except in case of suicide within one year, or the non-payment of premiums.

In order to forfeit a policy for the breach of a stipulation or condition contained therein, the contract must in terms provide that the liability of the company shall cease, or that the policy shall become void, on occurrence of the breach of the condition. Knecht v. Insurance Company, 35 Am. Rep. 641 (Pa.) Hobbs v. Benefit Association, 47 N. W. 983 (Ia.). State Ins. Co. v. Maackens, 38 N. J. Law, 564. Purdy v. Life Association, 74 S. W. 486 (Mo.) Zepp v. Grand Lodge, 69 Mo. App. 487. Cooley, Briefs on the Law of Insurance, volume III., page 2246.

Courts will construe a contract of insurance liberally, so as to give it effect rather than to make it void. Conditions which create forfeitures will be construed most strongly against the insurer and will never be extended beyond the strict words of the policy. Only a stern legal necessity will induce such a construction as will nullify the policy. Wood on Insurance, Sec. 58. Bliss on Life Insurance, Sec. 385. N. W. Mut. Life Ins. Co. v. Hazelett, 105 Ind. 212. Franklin Life Ins. Co. v. Wallace, 93 Ind. 7. Carson v. Jersey City Fire Ins. Co. 43 N. J. Law 300. Stone's Admr's v. U. S. Casualty Co., 34 N. J. Law 371. Hartford Ins. Co. v. Walsh, 54 Ill. 164. Steinert v. United Brotherhood, 97 N. W. 668. McMaster v. Ins. Co. of North America, 55 N. Y. 222. Herrman v. Merchants' Ins. Co., 81 N. Y. 184. Palmer v. Warren Ins Co., 1 Story 360.

Forfeitures should always rest upon substantial grounds. They are not favored either by our code or at common law. Enos v. Insurance Co., 4 S. D. 656. Appleton Iron Co. v. Assurance Co., 1 N. W. 9 (Wis.) Olmstead v. Insurance Co., 15 N. W. 82 (Mich.) Knickerbocker Ins. Co. v. Norton, 96 U. S. 242. May on Insurance, 367. Civil Code, Sec. 1128.

It is a general rule that where a policy of life insurance provides for a forfeiture in case of the breach of certain conditions, there must be some relation between the ground of forfeiture and the cause of death, in order to render the policy void. Woodmen v. Gilliland, 67 Pac. 485 (Okl.) Accident Co. v. Sibley, 57 Ill. App. 315. Standard Life Ins. Co. v. Koen, 36 S. W. 133 (Tex.) Insurance Co. v. Hughes, 60 S. W. 850 (Ky.) Summers v. Insurance Co., 13 La. Ann. 504. Horton v. Assurance Co., 3 Alb. Law J. 233.

Where a fire insurance policy contains provisions avoiding it for change of location, use for certain purposes, vacancy of premises, incumbrance, etc., the avoidance intended by the stipulation is during, and only during the existence of the forbidden hazard; the failure to comply with its terms merely suspends the policy during such non-compliance, and on the termination of the breach the policy reattaches with all its original force and effect. Ohio Farmers Ins. Co. v. Burget, 61 N. E. 712 (Ohio.) New Eng. F. & M. Ins. Co. v. Wetmore, 32 Ill. 221. Traders Ins Co. v. Catlin, 163 Ill. 256. Johansen v. Home Ins. Co., 74 N. W. 866 (Neb.) State Ins. Co. v. Schreck, 43 N. W. 340 (Neb.) Born v. Home Ins. Co., 81 N. W. 676 (Ia.) Hinckley v. Germania Fire Ins. Co. 140 Mass. 38. Mutual Fire Ins. Co. v. Coatsville Shoe Factory, 80 Pa. 407. Lapene v. Sun Mutual Ins. Co., 58 Am. Dec. 668 (La.) Power v. Ocean Ins. Co., 36 Am. Dec. 665 (La.) Cooley's Briefs on the Law of Insurance, volume II., pages 1883-1885.

The fact that Clarence P. Edmunds, the insured, failed to keep his promise relative to engaging in the occupation of handling electric wires and dynamos within one year from the issuance of the policy, but did engage in such occupation six days before the expiration of the year, had no relation to his death, and in no way contributed thereto. The Insurance Company sustained no damage, and incurred no loss by reason of his non-compliance with the promise contained in his application.

At the time of his death, the insured was engaged in a lawful occupation, and one permitted by the terms of his policy. Defendant cannot defeat a recovery upon the policy by reason of a temporary breach of a stipulation in the application, which breach did not exist at the time of death and had no relaton to the cause of death.

## IN REPLY.

Section 1856, Civ. Code, has not been in effect, as regards policies of life insurance like the one in question, since February 19, 1909. It was repealed by Ch. 58, Laws 1909.

Section 2 thereof provides: "The following are established as standard forms in which policies of life insurance may be issued and delivered in this state," and then sets out standard forms for six different kinds of life insurance policies, each of which contains the following provision: "All statements made by the in-

sured shall, in the absence of fraud, be deemed representations and not warranties."

The policy issued in this case bears date November 21, 1910, and conforms to the standard form prescribed for ordinary life insurance policies, and contains the provision above quoted.

The provision in Section 1856 that—"A statement in a policy which imports that it is intended to do or not to do a thing which materially affects the risk, is a warranty that such act or omission shall take place," is in conflict with the provision of the act of 1909 that—"All statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties." Both of these provisions cannot apply to the policy in question.     It would make no difference in this case whether such statement be construed as a warranty or a representation.

McCOY, J.  From the plaintiff's complaint it appears that on the 21st day of November, 1910, there was issued and delivered to Clarence P. Edmonds, as the insured, a life insurance policy, the plaintiff and respondent being therein named as beneficiary; that the application preceding said  policy contained a clause which, among other things, contained the following: "During the period of one year following the date of the issue of the policy of insurance for which application is hereby made, I will not engage in any of the following extra hazardous occupations or employments; retailing intoxicating  liquors,  handling electric wirec or dynamos," etc.—naming a number of other occupations as being extra hazardous. The policy also contained the following as a portion of one of its provisions: "This policy is free from any restriction after one year from its date of issue, as set forth in the provisions of the application attached hereto."   On the 24th day of October, 1911, said insured entered the employ of the General Electric Company, and on November 15th became engaged in the occupation of handling electric wires and dynamos, and so continuously continued to be engaged until the 22nd day of February, 1912, when he was killed by an electric shock while being so engaged.  From an order overruling a demurrer to said complaint, defendant appeals.

It is the contention of appellant that as soon as the insured violated the terms of the policy and the application by engaging in the forbidden occupation within one year of the date of in-

surance, such policy, by reason thereof, became forever afterwards void and of no effect whatsoever; while on the other hand, the contention of respondent is that during the time within the year, after the issuance of the policy, that insured engaged in the forbidden extra hazardous occupation the right to recover on such policy was suspended, but when the death of the insured occurred at a time when there was no restriction, by the terms of the policy, as to such occupation which caused his death, then recovery was proper.

We are inclined to the view that the contention of respondent is the right one, and that the demurrer was properly overruled. If the death of insured had occurred prior to November 21, 1911, by reason of and while he was engaged in the prohibited occupation then there is but little question, but what a recovery on this policy would have been improper; but after the 21st day of November, 1911, he was not prohibited or restricted by the terms of the contract from engaging in the occupation of handling electric wires or dynamos. From the 22nd day of November, 1911, until the time of his death, a period of three months, the insured was so employed and engaged, not in violation of the contract, but by implied permission thereof. There is absolutely nothing in the circumstances of this case that would, to the least degree, indicate that the death of the insured was in any manner whatsoever due to or connected with the one month's employment in violation of the contract.

We have been unable to find any reported case involving a like provision in policy or application. The usual application and policy restrict and prohibit the extra hazardous occupation throughout the entire existence of the policy. A somewhat analogous situation arises under fire insurance policies, where the policy is conditional that the insured property shall not be suffered to become vacant, or that extra inflammable materials shall not be stored therein, or that the insured property shall not become mortgaged or insumbered, and like provisions, during the existence of the policy. All these conditions including the one involved in the case at bar, relate to the question of extra hazardous increased risk or peril. It seems to be held by many courts that, when the extra hazardous condition occurs temporarily during the existence of the policy, but has ceased to exist at the time of loss, and

where there is no connection between the cause of a loss and the prior existing forbidden extra hazard, the policy is voidable and suspended during the continuation of the forbidden extra hazard, but that, when the temporary extra hazard ceases, the policy revives, and is again in full force and effect, and that a recovery may be had thereon for loss occurring after the removal of the forbidden extra hazard. In the case at bar inhibition against extra hazardous employment, by the terms of the contract, was for a temporary period only. Sumpter Tob. Warehouse Co. v. Phoenix Ins. Co., 76 S. C. 76, 56 S. E. 654, 10 L. R. A. (N. S.) 736, 121 Am. St. Rep. 941, 11 Ann. Cas. 780, and note; Cooley's Briefs on Ins. §§1883-1885. In the case of Union Life Ins. Co. v. Hughes' Adm'r, 110 Ky. 26, 60 S. W. 850, where a policy was conditional against the excessive, use and engaging in the business of selling intoxicating liquors, and where the insured had both used intoxicants and engaged in such business in violation of the policy, but had ceased to do so at the time of death, and death not being due to such violation of the terms of the contract, it was held that the right to recover on the policy was not forfeited.

- Finding no error in the record, the order appealed from is affirmed